UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAREN VATEL<br><br>    Plaintiff,<br><br>    v.<br><br>ALLIANCE OF AUTOMOBILE MANUFACTURERS<br><br>and<br><br>DAVID K. McCURDY<br>in his official and individual capacities,<br><br>    Defendants. | Case no. 1:08-cv-00467-RJL<br><br>Judge Richard J. Leon<br><br>(Removed from D.C. Superior Court<br>  Case no. 2008 CA 000920 B)<br><br>July 29, 2008 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR A PROTECTIVE ORDER**

Plaintiff Karen Vatel, through counsel, respectfully files this opposition to the motion for a protective order to preclude plaintiff from deposing Craig Helsing. This Court should deny the protective order for Craig Helsing.

### I.  STATEMENT OF FACTS.

Karen Vatel is suing Defendants — the Alliance of Automobile Manufacturers, Inc., and David Keith McCurdy, CEO and President of the Alliance — to recover compensatory and punitive damages and reasonable attorney's fees and costs for sex and race discrimination under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1402.01 and 2-1402.11(a)(1) (2007).

Ms. Vatel is an African-American female. She was employed by the Alliance of Automobile Manufacturers as an executive assistant. Ms. Vatel was hired by former Alliance

CEO Fred Webber on June 26, 2006. When Mr. Webber retired, Mr. McCurdy replaced him as CEO. On November 1, 2007, Mr. McCurdy fired Ms. Vatel. She alleges her termination was an act of discrimination based on her race and gender.

Part of Ms. Vatel's job as executive assistant to the President of the Alliance of Automobile Manufacturers was to "arrange for conferences, seminars, meetings, agenda." (Position Description).

Ms. Vatel was responsible for organizing the twice monthly executive committee meetings. In 2007, Mr. Helsing was the chair of executive committee. Ms. Vatel had to work with Mr. Helsing to create an agenda for each meeting and any other matters Mr. Helsing required for the meetings.

## II.  ARGUMENT.

### A.  The Trend among Federal Courts to Grant Protective Orders is Irrelevant in this Matter.

While the trend in federal courts may be to grant protective orders for limiting or preventing the oral deposition of high level executives when the subject of that deposition will only be remotely relevant to the case, in Ms. Vatel's case, however, the subject of Mr. Helsing's deposition is very relevant to her claim because he does have direct knowledge concerning her performance.

The purpose of discovery is to allow the parties to obtain information that is relevant to their claims and defenses. Fed R. Civ. P. 26 (b)(1). "For purposes of discovery , relevance is broadly construed." *Burlington Ins. Co. V. Okie Dokie, Inc.,* 368 F. Supp 2d 83 (D.D.C. 2005). This Court

employs a balancing test in determining whether to grant a motion for protective order, weighing the burdensomeness to the moving party against the requestor's for, and relevance of the information sought. *John Doe, M.D. v. Provident Life & Accident Ins. Co.,* 247 F.R.D. 218 (D.D.C. 2008).

Defendants have cited ten cases to support their contention that the current trend of courts is to grant protective orders similar to their request for a protective order on Craig Helsing. However, Defendants failed to cite a single District of Columbia case.

Further, each case cited is easily distinguished from this case. In *Folwell v. Hernandez*, 210 F.R.D. 169 (M.D.N.C. 2002), plaintiff was seeking to depose the Ms. Woltz, current CEO of Sara Lee Corporation. Sara Lee Corp. was a defendant in the case and the employer of another defendant. Plaintiff had already deposed eight executives at Sara Lee, and Ms. Woltz was not CEO at the time of the incident but was familiar with the inner workings of Sara Lee and all of its subdivisions. *Folwell,* 210 F.R.D. at 171. The Court denied, in part, defendant's motion for a protective order because Ms. Woltz did have specific knowledge concerning certain matters of the case, including corporate policy and management charts. *Folwell,* 210 F.R.D. at 174. The Court did, however, restrict plaintiff from asking Ms. Woltz any questions about the incident because she had no personal knowledge about what occurred and limited the deposition to one morning, so as not to inconvenience or overburden Ms. Woltz or defendant. *Folwell,* 210 F.R.D. at 175.

Ms. Vatel does not have any present intention of deposing any other members of the executive committee besides Mr. Helsing. Mr. Helsing may not have knowledge concerning every aspect of Ms. Vatel's case, but he does have personal knowledge concerning the manner in which Ms. Vatel performed her job related to the executive committee, and Mr. McCurdy's interactions with her.

In *Lewelling, et. al. v. Farmers Insurance of Columbus, Inc., et. al.*, 879 F. 2d 212 (6th Cir. 1989), plaintiffs sought to depose R.G. Lindsley, then-Chairman of the Board of Directors and CEO of Farmers Group, Inc., concerning oral inducements that were made to plaintiffs convincing them to relocate but were not included in the contract or delivered upon relocation. The court granted defendants' protective order because Mr. Lindsley had no knowledge of Farmers Insurance of Columbus' interactions with the plaintiffs and because plaintiffs attempted to use the threat of deposition as leverage to sit down with Mr. Lindsley to settle the matter.

In Ms. Vatel's case, however, Mr. Helsing has first-hand knowledge of how she performed at least one significant aspect of her position. Ms. Vatel is not trying to use this deposition as leverage for settlement, to harass Mr. Helsing or Mr. McCurdy, or unduly burden opposing counsel. Deposing Mr. Helsing is to get information and evidence about her job performance.

Defendants cite *Marisco v. Sears Holding f/k/a KMART Holding*, 2007 U.S. Dist. LEXIS 22757, *Koken v. Lexington Ins. Co.*, 2005 U.S. Dist. LEXIS 46195 (E.D. Pa. 2005), and *Thomas v. IBM*, 48 F. 3d. 478 (10th Cir. 1995), etc., to reiterate that when a high-level decision maker or corporate executive has no personal knowledge relevant to the case, the courts will issue protective orders barring deposition by opposing counsel.

These cases are not relevant here. In Ms. Vatel's case Mr. Helsing does have unique and personal knowledge concerning Ms. Vatel's ability to perform her position as Mr. Webber's and later Mr. McCurdy's executive assistant.

### B. Deposing Mr. Helsing is Within the Scope of Discovery

As noted above, the purpose of discovery is to allow the parties to obtain information that is relevant to their claims and defenses. Fed R. Civ. P. 26 (b)(1). "For purposes of discovery, relevance is broadly construed." *Burlington Ins. Co. V. Okie Dokie, Inc.,* 368 F. Supp 2d 83 (D.D.C. 2005).

In response to Ms. Vatel's complaint, Defendants have denied that Ms. Vatel was terminated based on her race or gender. (Answer and Amended Answer). However, Defendants fail to offer an alternative explanation in either answer.

Ms. Vatel wants to establish, through the deposition of Mr. Helsing, that she was performing her job duties in an excellent and efficient manner. Part of Ms. Vatel's job as executive assistant to the President of the Alliance of Automobile Manufacturers was to "arrange for conferences, seminars, meetings, agenda." (Position Description). Ms. Vatel was responsible for organizing the twice monthly executive committee meetings. In 2007, Mr. Helsing was the chair of executive committee. Ms. Vatel had to work with Mr. Helsing to create an agenda for each meeting and any other matters Mr. Helsing required for the meetings. Ms. Vatel also worked with Mr. Helsing to arrange one-on-one meetings between him and Mr. McCurdy and keep him apprised of CAFE meetings and schedule changes. (Vatel's Affidavit)

While Mr. Helsing is not an employee of the Alliance of Automobile Manufacturers, he has first-hand knowledge concerning how Ms. Vatel performed one of her main duties as executive assistant. As noted above, this Court,

> employs a balancing test in determining whether to grant a motion for protective order, weighing the burdensomeness to the moving party against the requestor's for, and relevance of the information sought. *John Doe, M.D. v. Provident Life & Accident Ins. Co.,* 247 F.R.D. 218 (D.D.C. 2008).

Plaintiff's intended purpose for deposing Mr. Helsing is to establish that Ms. Vatel performed her job duties in an excellent and efficient manner, not to harass or embarrass the Alliance of Automobile Manufacturers.

Plaintiff is more than willing to work with Mr. Helsing's schedule to find a convenient time for the deposition. In fact, on July 23, 2007, plaintiff's counsel attempted to contact Mr. Helsing to arrange a mutually agreeable time for the deposition.

Defendants have failed to demonstrate a legitimate burden that the deposition of Mr. Helsing weighs on them. Plaintiff did not request to depose or have any intention of using Mr. Helsing's deposition to embarrass the Alliance of Automobile Manufacturers, Mr. McCurdy or defense counsel. Ms. Vatel wants to depose Mr. Helsing to get his opinion of how she performed on of her major work duties.

### C. Plaintiff's Intention for Deposing Mr. Helsing is to Uncover Evidence that Assists Her in her Claim or Will Lead to Admissible Evidence

Defendants allege that plaintiff's counsel is trying to depose Mr. Helsing merely to harass. However, as repeatedly stated in this opposition, Mr. Helsing has direct, personal knowledge concerning this case. Mr. Helsing worked with Ms. Vatel during 2007 as Chair of the executive committee under former President of Alliance of Automobile Manufacturers Fred Webber and Mr. McCurdy. Mr. Helsing has personal knowledge about the fruits of Ms. Vatel's labor concerning the executive committee, keeping Mr. Helsing apprised of CAFE meetings and coordinating meetings between Mr. Helsing and Mr. McCurdy.

The burden is on the Defendants to "establish **'good cause'** under Rule 26(c) by demonstrating the specific evidence of the harm that would result." *Doe,* 247 F.R.D. at 221, quoting *Jennings v. Family Mgmt.,* 201 F.R.D. 272, 275 (D.D.C. 2005).

## CONCLUSION

Since Defendants have failed to demonstrate with specific evidence the harm deposing Mr. Helsing would cause, and that the harm outweighs the value of his testimony, this Court should deny the motion for a protective order.

July 29, 2008                               Respectfully submitted,

**KLIMASKI & ASSOCIATES, P.C.**

   */s/ James R. Klimaski*
James R. Klimaski, #243543

   */s/ Megins S. Skolnick*
Megins S. Skolnick, #498452

Klimaski & Associates, P.C.
1625 Massachusetts Avenue NW
Suite 500
Washington, DC  20036-2245
202-296-5600
Fax 202-296-5601
Klimaski@Klimaskilaw.com
Skolnick@Klimaskilaw.com

***Attorneys for Karen Vatel***

### CERTIFICATE OF SERVICE

 I certify that the foregoing *Plaintiff's Opposition to Defendants' Motion for a Protective Order* (along with any attachments, exhibits, etc.) will be served to the following counsel for Defendants in this case by the Court's CM/ECF system after proper filing of an Adobe PDF version of this item on the Court's secure website on July 29, 2008:

Ari Karen
Trevor S. Blake
VENABLE, LLP
575 7th Street NW
Washington, DC 20004
akaren@venable.com
tsblake@venable.com

               */s/ Jon Pinkus*
               Jon Pinkus
               Klimaski and Associates, PC

# Vatel Position Description

# Alliance of Automobile Manufacturers
## Position Description

| | |
|---|---|
| **Position:** | Special Assistant to the President |
| **Supervisor:** | President & CEO |
| **Status:** | Full Time |
| **FLSA:** | Exempt |
| **Location:** | Washington, DC |
| **Department:** | Office of the President |

### PRIMARY PURPOSE OF THE POSITION:
The Special Assistant facilitates the flow of information to and from the President of the Association. Administers the daily operations of the President's Office. Coordinates and arranges the Alliance's functions and meetings for the President with the highest level member corporate offices and government agencies. Performs administrative duties and special projects for the President and identifies and suggests changes to work guidelines and procedures.

### ESSENTIAL JOB FUNCTIONS:
- Schedules all activities of the President, both in-house meetings and out-of-town trips. Coordinates with appropriate offices for briefing materials and validation of scheduling requests.
- Prepares and coordinates the orderly system of communication from the President's Office to various Alliance members and committees, association staff and external allied organizations, media, Congress, and agencies of government.
- Drafts correspondence for President.
- Tracks departmental budget.
- Arranges for conferences, seminars, meetings, agenda; organizes transportation and hotel arrangements.
- Refers mail and telephone requests for information from the public, media, member companies, government agencies, and allied organizations to appropriate offices.
- Answers and screens telephone inquiries and handles subsequent requests.
- Prepares expense reports and other administrative reports as required.
- Manages and coordinates briefing packets for company visits & presentations made by the President.
- Maintains files of all essential documents.
- Manages and implements special projects as assigned.
- Other duties as assigned.

### QUALIFICATIONS/SKILLS/ KNOWLEDGE:
- Excellent oral and written communications skills, and telephone manner essential.
- High degree of organization, efficiency, self-management and administrative skills. Good attention to detail and ability to maintain confidentiality.
- Excellent typing, word processing, and spreadsheet skills. Ability to learn new computer application programs and attain proficiency.
- Excellent work habits and reliability

### EDUCATION/EXPERIENCE REQUIREMENTS
- Minimum high school graduate; Associate's or Bachelor's degree preferred.
- Three to five years-demonstrated capability and work experience at executive level required.

# Vatel Affidavit

# July 28, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAREN VATEL<br><br>    Plaintiff,<br><br>v.<br><br>ALLIANCE OF AUTOMOBILE MANUFACTURERS<br><br>and<br><br>DAVID K. McCURDY<br>in his official and individual capacities,<br><br>    Defendants. | Case no. 1:08-cv-00467-RJL<br><br>Judge Richard J. Leon<br><br>(Removed from D.C. Superior Court<br>Case no. 2008 CA 000920 B) |

AFFIDAVIT OF KAREN VATEL
July 28, 2008

I declare, under penalty of perjury, that the following is true and correct to the best of my knowledge, recollection, and belief.

I was told when I was hired that one of my job duties was to be the 'go to' person for the executive committee meetings. I knew that there were meetings twice a month every month. I would start preparing for each meeting a week ahead of time.

Ten days before an executive committee meeting, I would send out a meeting reminder to Alliance staff soliciting agenda items. Alliance staff had three days to submit their items. I assembled all the items for the agenda and gave the agenda to either John Whatley or Charles Robinson for review.

After Robinson or Whatley approved the agenda, they would send it to the Chair for final approval.

On the business day prior to the executive committee meeting, I sent the agenda out to each member of the executive committee.

I took notes during the executive committee meetings from both Dave McCurdy and Craig Helsing about items that they wanted done, for example meeting adjustments.

I usually spoke with Craig at least twice a week about the executive meetings. We had short conversations concerning the agenda.

I also spoke with Craig about planning one-on-one meetings between Craig and Dave. I frequently spoke with Craig about CAFÉ, specifically on standing calendar meetings and subsequent schedule adjustments.

Since Craig was the chair of the executive committee, he was familiar with how I efficiently organized the meetings and put together the agendas.

When Dave traveled with Craig to BMW headquarters meetings, I worked together with Craig's office to arrange Dave's travel itinerary.

Respectfully,

_7/28/08_
Date

_Karen V. Vatel_
Karen V. Vatel