UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAREN VATEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Case No. 08cv467 (RJL) |
| ALLIANCE OF AUTOMOBILE MANUFACTURERS | ) |
| | ) |
| and | ) |
| | ) |
| DAVID K. McCURDY, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION
(January 15, 2010) [# 25]

Plaintiff has brought suit against defendants alleging sex and race discrimination under the District of Columbia Human Rights Act. The case was removed from the Superior Court for the District of Columbia and is now before this Court on defendants' Motion for Summary Judgment. After careful consideration of the parties' pleadings, applicable law, and the entire record herein, the Court GRANTS defendants' motion.

BACKGROUND

This case arises out of Karen Vatel's brief period of work as an executive assistant to David McCurdy, the Chief Executive Officer of the Alliance of Automobile Manufacturers ("Alliance"). Vatel claims she was fired from that position because

McCurdy, a white male, "was uncomfortable working with an African American female as his executive assistant." (Pl.'s Opp'n at 2.)

Vatel began working for Alliance before McCurdy took over as CEO. (Def.'s Statement of Undisputed Facts ("Def.'s Facts") ¶¶ 1, 5.) She was hired in June 2006 by Fred Webber, the then-interim CEO. (*Id.* ¶ 1.) From the outset, Vatel understood that she was assisting an interim CEO and that she may be replaced whenever Alliance found a new chief executive. (Vatel Dep. at 149.) McCurdy was offered that chief role near the end of 2006 and quickly scheduled a lunch with Vatel to discuss whether she would remain employed as his executive assistant. (McCurdy Dep. at 11-12.) When McCurdy asked Vatel if she wanted to continue, she said she did and suggested she could help McCurdy transition into his new position. (*Id.*) McCurdy formally assumed duties as the CEO of Alliance in February 2007. (Def.'s Facts ¶ 5.)

It became clear to Vatel during the transition that her work for McCurdy would be much more difficult than it was for Webber. (Vatel Dep. at 81.) According to Vatel, McCurdy's schedule was "much more full" than Webber's and working for him required a lot more "focus," "forecasting," "troubleshooting," and "planning." (*Id.*) Nevertheless, Vatel believed she would be able to handle her new responsibilities because she "already knew [her] job" from her prior work with Webber. (*Id.*) Three months later, however, Vatel began attending monthly meetings with a human resources officer to address McCurdy's frustration with her job performance. (*Id.* at 124.)

On November 1, 2007, after nine months of working for McCurdy, and six months of meetings to address her job performance issues, Vatel was fired from Alliance. (*Id.* at 134-35.) In response, Vatel filed this suit in the Superior Court for the District of Columbia claiming that her termination was discriminatory. (First Am. Compl. ¶ 18.) Defendants removed the case to this Court and moved for summary judgment on the grounds that Vatel was not fired for discriminatory reasons, but rather for poor performance. Vatel, of course, opposes the motion. For the following reasons, Vatel has failed to produce sufficient evidence of discrimination to avoid summary judgment, and therefore, defendant's motion must be GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing a motion for summary judgment must "not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

To determine whether there is a genuine issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party must produce more than the "mere existence of a scintilla of evidence" to demonstrate triable issues of fact, however. *Id.* at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). In sum, the non-movant must offer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## ANALYSIS

Vatel has alleged one sole count of discriminatory termination under the District of Columbia Human Rights Act ("DCHRA"). (FAC ¶ 19-23.) The DCHRA makes it unlawful for employers to discharge an individual "wholly or partially *for a discriminatory reason.*" D.C. Code § 2-1402.11 (emphasis added). According to Vatel, McCurdy violated the DCHRA when he fired her discriminatorily based on his discomfort working with an African-American woman. (Pl.'s Opp'n at 2.)

To the contrary, defendants argue that Vatel was fired because of her poor performance, not race. (Def.'s Mot. at 8-9.) Specifically, defendants claim that Vatel not only had trouble adjusting from Webber's easy style to the increased demands of assisting McCurdy, but that she actually refused to adjust because, in her own estimation, she felt she was doing just fine. (Def.'s Reply at 4.) Given the intensely interpersonal nature of the president-executive assistant relationship, for which Vatel herself acknowledged chemistry was essential, Alliance contends that Vatel's reluctance to adapt

to McCurdy's work style, even when told an adjustment was necessary, was a legitimate performance-based reason for her firing. (*Id.* at 5.) I agree.

Ruling on defendants' motion essentially boils down to answering one question: has Vatel produced sufficient evidence for a reasonable jury to disbelieve defendants' stated reason for her termination, and to find instead that defendants' intentionally discriminated against her based on her race or sex? *See Hamilton v. Howard Univ.*, 960 A.2d 308, 314-16 (D.C. 2008); *cf. Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (clarifying legal standard for summary judgment under Title VII). Unfortunately for Vatel, the answer is no because she has offered virtually no evidence to support her contention that she was fired because of her race.

Indeed, to date, the only probative piece of evidence Vatel has offered is the fact that McCurdy replaced her with a white male. While this fact may permit an *inference* of discrimination, it is insufficient, without more, to establish discrimination. *See Lewis v. NVT Technologies, Inc.*, 118 F. Supp. 2d 51, 53 n.3 (D.D.C. 2000) (citing *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997)). Indeed, the insufficiency of the inference drawn from this fact becomes even more apparent when viewed alongside the rest of the record. For example, any such inference of discrimination is substantially offset by the inference of *non*discrimination that can be drawn from the fact that McCurdy himself hired Vatel less than a year earlier. *See Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 12 (D.D.C. 2000), *abrogated on other grounds by Mastro*

*v. Potomac Electric Power Corp.*, 447 F.3d 843, 851 (D.C. Cir. 2006). Moreover, the record corroborates defendants' stated performance-based reasons for Vatel's termination. Vatel herself even admits that for six months prior to her termination, she had monthly meetings with a human resources director at which she was told she needed to improve her work. (Vatel Dep. at 124.)

Moving past the racial background of her replacement, Vatel's opposition to defendants' motion rests on mere argument and conjecture. For instance, Vatel characterizes the performance meetings she attended as a sham, orchestrated over a six month period to cover up McCurdy's ultimate plan to discriminatorily fire her. She offers no evidence of this, however. Instead, she points to her own testimony in which she speculates that the meetings must have been a sham because she was not given specifics concerning McCurdy's general frustration with her work, and because the meetings were conducted by a human resources director rather than McCurdy himself. (Pl.'s Opp'n at 9-10.) Putting aside the self-serving nature of these allegations, Vatel's testimony does not actually contradict defendants' stated reason for her firing. It merely seeks to create inferences of illegitimacy based on the fact that McCurdy did not address Vatel's poor performance in the way *she* thought best. More to the point, Vatel's arguments are simply that; they are not evidence and do not help her carry her burden on summary judgment.[1] *Anderson*, 477 U.S. at 252.

---

[1] If anything, plaintiff's argument in this regard might actually corroborate defendants' stated reason for her firing. Vatel's insistence to this day that McCurdy "fail[ed]" to address her

Finally, Vatel purports to offer one last piece of evidence intended to show that her termination was discriminatory. She claims that McCurdy filled three vacant vice president positions with white males, in one instance passing over a qualified African-American female. (Pl.'s Opp'n at 10.) Unfortunately for Vatel, this claim does not make up for her evidentiary shortcomings in this case. First, there is doubtful probative value to such a small sample size. *See Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 620-21 (1974). Second, any probative value that might otherwise attach to this piece of evidence is diminished by Vatel's admission that it is an incomplete snapshot. Indeed, she testified at her deposition and suggested in her pleading that there were African-Americans working at Alliance in management and vice president positions. (Vatel Dep. at 102-104; Pl.'s Opp'n at 10.) Thus, Vatel's attempt to show a pattern of discriminatory animus at Alliance -- one likely to have played a role in her firing -- has little to no probative value and thus cannot help her avoid defendants' summary judgment motion. *Anderson*, 477 U.S. at 252.

---

performance issues himself, and thus that her firing was illegitimate, is quite telling. (Pl.'s Opp'n at 4.) McCurdy, of course, may have had a host of legitimate reasons for employing a human resources professional to deal with Vatel. Furthermore, as CEO of Alliance and Vatel's boss, it was McCurdy's prerogative to address Vatel's performance issues in the manner he felt most appropriate. That Vatel continues to believe otherwise underscores defendants' argument that she was unwilling to adapt to McCurdy's style and to accept her role as his assistant.

## CONCLUSION

For all these reasons, defendants' Motion for Summary Judgment is GRANTED and plaintiff's case is dismissed. An appropriate Order will issue with this memorandum.

_____
RICHARD J. LEON
United States District Judge